# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

JAKARRIS HARPER                     CIVIL ACTION NO. 20-376-P

VERSUS                              JUDGE DOUGHTY

DEPUTY WHITESIDE, ET AL.            MAGISTRATE JUDGE HORNSBY


## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Jakarris Harper, ("Plaintiff"), pursuant to 42 U.S.C. § 1983.  This complaint was received and filed in this court on March 24, 2020.  He is incarcerated at the Caddo Correctional Center in Shreveport, Louisiana.  He names Deputy Whiteside, Deputy Fair, Deputy Warner, and Mrs. Craft as defendants.

Plaintiff claims that on February 8, 2020, he lost consciousness in his cell for several minutes.  He claims that when he regained consciousness, he realized he had injured his thumb, wrist, shoulder, and elbow.

Plaintiff claims that after multiple attempts to get the attention of the deputies, Deputy Fair finally responded from the control panel.  He claims Deputy Fair had a brief conversation with him about the incident and then came to his cell.  He claims Deputy Fair

threatened him and stated he would lock him down if he was wasting his time.  Plaintiff claims he argued with Deputy Fair and showed him his injured thumb and wrist and told him about the pain in his shoulder and elbow.  He claims Deputy Fair told him that he was wasting his time.  He claims that after more arguing and pleas for medical attention, the deputies finally called the medical staff.

Plaintiff claims that after the deputies talked to the medical staff, he was escorted to the medical department for evaluation.  He claims Deputy Whiteside accused him of faking his injury and told him that he would be locked down if he was not injured.

Plaintiff claims he showed Mrs. Croft his hand and wrist and told her that his shoulder and elbow hurt.  He claims Mrs. Croft ignored him and asked if he was experiencing chest pains.  He claims he told her that he was there for his injuries and he did not have chest pains.  He claims Mrs. Croft checked his blood pressure which was extremely high.  He claims his blood pressure was then checked multiple times to make sure the machine was not malfunctioning.  He claims Mrs. Croft told him that his high blood pressure may have been why he passed out, but she did not treat his thumb and wrist injury and she did not give him medication for his pain.

Plaintiff claims Deputy Warner escorted him to his cell.  He claims Deputy Warner told him that he was malingering and would be placed in lock down when he returned to the dorm.

Plaintiff claims that on February 10, 2020, he was taken to the medical department. He claims x-rays of his hand were ordered and he was given pain medication.

Plaintiff claims that on February 11, 2020, he was transported to the hospital for treatment.  He claims he was diagnosed with a broken thumb.  He claims he went three days without needed treatment for his thumb.

Plaintiff claims that on February 8. 2020, the deputies and medical staff treated him with indifference and accused him of faking his injuries and malingering.  He claims the deputies and medical staff threatened him and tried to prevent him from receiving medical attention.  He claims he was placed on lock down for unknown reasons.

Accordingly, Plaintiff seeks monetary relief.

## LAW AND ANALYSIS

### Medical Care

Plaintiff claims he was denied proper treatment for his broken thumb for three days. Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law.  The right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of, or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994).  It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the

conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976).  Further, the plaintiff must establish that the defendants possessed a culpable state of mind.  See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.  A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs.  To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff.  It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs.  Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  Plaintiff was seen by Mrs. Croft in the medical department on the day of the incident.  She questioned him about his symptoms and took his blood pressure multiple times.  On February 10, 2020, Plaintiff was taken to the medical department and x-rays were ordered and he was given pain medication.  On February 11, 2020, Plaintiff

was transported to the hospital for treatment of his broken thumb. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Furthermore, Plaintiff does not allege how the alleged three-day delay in transporting him to the hospital for his broken thumb was based on deliberate indifference.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical care claims should be dismissed with prejudice as frivolous.

**Verbal Threats**

Plaintiff claims the deputies and medical staff verbally threatened him. Specifically, he claims Deputy Fair threatened to place him on lock down if he was wasting his time about his injury. He claims Deputy Whiteside threatened to lock him down if he was faking

his injury.  He claims Deputy Warner also threatened that he would be placed on lock down for malingering.

Plaintiff's claims of verbal abuse and harassment fail to raise a federal constitutional claim.  A plaintiff can successfully invoke § 1983 only when his federal statutory or constitutional rights have been violated. The Fifth Circuit has held that verbal abuse or harassment by a prison guard does not amount to an Eighth Amendment violation. Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir.1997) (citing Bender v. Brumley, 1 F.3d 271, 274 n. 4 (5th Cir.1993)).  The "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." Robertson v. Plano City of Texas, 70 F.3d 21, 24 (5th Cir.1995).  See Bender v. Brumley, 1 F.3d 271, 274 n. 4 (5th Cir.1993) (holding that claims of verbal abuse and harassment are not actionable under § 1983).

Accordingly, Plaintiff's claims regarding verbal threats should be dismissed with prejudice as frivolous.

**Lock Down**

Plaintiff claims he was placed on lock down for no reason.  This is not a claim that this court can resolve.  Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration.  See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds).  Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials.  See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990).  "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification.  In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)).

Accordingly, Plaintiff's claim regarding his classification is frivolous because it lacks an arguable basis in law and in fact, and it should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law

or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 27th day of April, 2020.

Mark L. Hornsby
U.S. Magistrate Judge